UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 07-121-GWU

JEFFERY MARTIN, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Jeffery Martin, was found by an Administrative Law Judge (ALJ) to be "severely" impaired due to low back and neck pain. (Tr. 16). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Martin retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 17-20). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 48, seventh grade education and history of unskilled and semi-skilled work experience could perform any jobs if he were limited to "light" level exertion, and also had the following non-exertional restrictions. (Tr. 310). He: (1) could never climb ladders, ropes, and scaffolds; (2) could occasionally stoop, kneel, crouch, crawl, and reach overhead with the left arm; and (3) needed to avoid even moderate exposure to vibrations. (Id.). The VE responded that there were jobs that

such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Id.).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Martin alleged disability due to a back injury which had occurred on his job in 2002 and which prevented him from lifting, bending, standing, or lying for a long period of time. (Tr. 65-6). At the hearing, he also mentioned a most recent neck injury related to a fall. (Tr. 300-1). The neck pain radiated down his left arm and gave him difficulty in using his left hand. (Tr. 305). Due to his back pain, he stated that he had to change positions frequently, and he had been unable to afford medication following back surgery because he did not have medical coverage. (Tr. 297-9).

Medical evidence in the transcript shows that Dr. Thomas Graber performed a L5-S1 microdiscectomy on September 5, 2002, after an MRI showed a large ruptured disc at that level. (Tr. 145, 152). The plaintiff continued to complain of low back and leg pain, and new x-rays following the surgery showed significant degenerative arthritic changes in the dorsal spine. (Tr. 137-8). Dr. Graber noted in a letter to Mr. Martin's Worker's Compensation carrier in December, 2002 that the S1 nerve root was severely damaged by the ruptured disc and this had caused

ongoing pain post-operatively. (Tr. 133). He did not feel the plaintiff would reach maximum medical improvement until approximately one year after the surgery. (Id.). Epidural steroidal injections were provided in the summer of 2003. (Tr. 128). There was a gap in treatment until December, 2003, with the physician noting that the plaintiff had been in jail "for the last month or two," and had not been able to take his prescribed medication, Percocet. (Tr. 127). Without the medication, his right leg felt as if it was burning, was painful, and he had trouble moving about. (Id.). After being seen for a medication refill in January, 2004, the plaintiff apparently discontinued treatment with this source.[1] Dr. Graber did not list any functional restrictions.

The plaintiff `then obtained treatment from Dr. Todd A. Graham, a specialist in physical medicine and rehabilitation, at the direction of his Worker's Compensation carrier. (Tr. 240). Dr. Graham reviewed the patient's medical history and conducted a physical examination which showed limited lumbar flexibility due to complaints of pain and absent ankle reflexes. (Tr. 166-7). Mr. Martin agreed to a trial of the medication Neurontin, but on followup stated that he could not tolerate it because of side effects. (Tr. 165, 167). He declined physical therapy or injections. (Tr. 165). Dr. Graham prescribed more Percocet and opined that Mr.

[1] A letter from the Worker's Compensation insurance carrier indicates that Mr. Martin was not authorized to seek treatment at Dr. Graber's office after September 11, 2003. (Tr. 239).

Martin had reached maximum medical improvement. He assigned "permanent work restrictions of no lifting, pushing, or pulling more than 10 pounds." (Id.). He also provided a medical report on January 11, 2005 stating that Mr. Martin's diagnosis was lumbar disc herniation status post-surgery and he was limited to a "10 pound restriction." (Tr. 164). The duration of the condition was said to be indefinite.

Dr. Stephen Lamb conducted a consultative examination of the plaintiff on January 14, 2005. Dr. Lamb found his gait and station to be unremarkable. (Tr. 169). There was diminished sensation to light touch over the back of the right calf and thigh and forward flexion was limited to only 30 degrees and lateral flexion to only 10 degrees. (Tr. 170). The remainder of the examination was essentially normal. Dr. Lamb diagnosed degenerative disc disease and noted that there was some evidence of nerve root compression. (Id.).[2] He said there was evidence for a severe restriction for bending, although he was puzzled that the remainder of his range of motion testing was normal. (Id.).

The evidence was reviewed at this point by Dr. David Swan, a state agency physician. Dr. Swan did review operative notes concerning the back surgery but stated that "[t]he treating physician was somewhat at a loss to explain the total

---

[2]Dr. Lamb apparently had no prior records to review. He noted that there was a "possible scar" on the lower back and added "I did not see this as well as I would like." (Tr. 170). It appears there was some question in his mind as to whether the plaintiff had actually had surgery for a ruptured disc.

failure of the operative procedure" and "[n]o additional studies have been carried out" such as MRIs, nerve conduction studies, or x-rays. (Tr. 174-5). This belief was erroneous. As previously noted, Dr. Graber had obtained x-rays showing significant degenerative arthritic changes. (Tr. 137-8). His belief that the physician was at a loss to explain the plaintiff's continuing pain appears to overlook not only the post-operative x-rays but Dr. Graber's statements that it was being caused by severe damage to the nerve root. (Tr. 133). Dr. Swan reviewed the plaintiff's testimony and the report from Dr. Lamb and concluded that Mr. Martin would have restrictions consistent with the hypothetical question, including the ability to lift up to 20 pounds occasionally and occasionally perform postural activities except for climbing of ladders, ropes, and scaffolds. (Tr. 173-80). He felt that Dr. Lamb's report was entitled to moderate weight. (Tr. 179). Another state agency physician, Dr. Amanda Lange, affirmed Dr. Swan's report without additional discussion. (Tr. 197-204). The ALJ adopted their restrictions.

The plaintiff argues on appeal that the ALJ failed to reconcile Dr. Lamb's opinion regarding a "severe" restriction on bending with the finding that he could "occasionally" stoop. The court agrees. The ALJ did mention Dr. Lamb's finding but neither he nor either of the state agency reviewing sources offered any rationale for rejecting this essentially uncontradicted opinion. Moreover, neither of the state agency reviewers or the ALJ even mentioned the permanent 10 pound lifting

restriction given by Dr. Graham. While Dr. Graham was not a long-term treating source, having seen the plaintiff on only two occasions, he was an examiner and did have the benefit of a review of medical records. As noted in the decision, the ALJ was required to consider medical opinions from acceptable medical sources which reflect judgments about the nature and severity of impairments and resulting limitations. 20 C.F.R. Sections 404.1527; 416.927.

The decision will be remanded for further consideration.

This the 19th day of March, 2008.

UNITED STATES DISTRICT COURT EASTERN DISTRICT OF KENTUCKY

**Signed By:**

***G. Wix Unthank***

**United States Senior Judge**